▪ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TERRIE WIGGINS, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County, dated May 1, 1975, which, after a hearing, granted defendant's motion to suppress certain physical evidence. Order reversed, on the law and the facts, and motion denied. At the suppression hearing, the arresting officer testified that while he was on radio patrol duty with a partner he was approached by a man, who gave him his name and address, and told him that "there was a man up the street with a blue Eldorado, and * * * a gun in his trunk." He took down the name and address of the man who had provided this information. After proceeding one block in the patrol car, the officer saw a blue Eldorado, with its trunk open; the defendant was sitting "on the rear open part of the trunk." The officer drew his revolver and rested it on the open windowsill of the patrol car; he then told defendant not to move and not to close the trunk. When the officer ascertained that defendant was not armed, and his partner had exited the patrol car, the officer "reholstered" his revolver. He then asked defendant whether the blue vehicle was his and whether he "had a registration." When defendant stood up to remove his wallet from his back pocket, the officer looked into the open trunk behind where the defendant had been sitting and observed about two inches of the butt of a gun protruding from a paper bag. The gun was removed from the trunk and defendant was placed under arrest. Upon examination, the gun was found to contain six rounds of ammunition. Criminal Term, in making its determination, found that although the officer properly proceeded to act on the information he was given, he had, when he pointed his gun, in fact arrested defendant and that such arrest was unlawful as it lacked probable cause. This finding was erroneous as the pointing of the gun did not constitute an arrest; it was merely a self-protective measure. The arrest occurred only after the gun was observed and removed from the trunk of the Eldorado. Under the circumstances appearing in this record, we are of the view that the officer had reasonable grounds to suspect that "criminal activity" was "afoot" as he had been told that the gun was in the trunk of the car in which defendant was sitting, and a justifiable belief that defendant was "armed and presently dangerous to the officer or to others" (see Terry v Ohio, 392 US 1, 24; People v Rivera, 14 NY2d 441, cert den 379 US 978; People v Taggart, 20 NY2d 335, 339). It was therefore error to grant the motion to suppress. Latham, Acting P. J., Cohalan and Brennan, JJ., concur; Shapiro, J., concurs in the result, with the following memorandum, in which Munder, J., concurs. I concur in the decision of the majority to reverse the order granting defendant's motion to suppress the weapon found in his automobile, but I cannot subscribe to the path by which it reaches its conclusion. I agree with the majority that the police officer properly proceeded to investigate the information that "there was a man up the street with a blue Eldorado, and * * * a gun in his trunk." Acting on the information received, the officer, in broad daylight and accompanied by a fellow officer, proceeded up the street in the patrol car and did indeed encounter defendant, who was leaning against the open trunk of a blue Eldorado. The officer thereupon pointed his gun at

defendant from the open windowsill of the patrol car and said, "don't move and don't close the trunk." The "stopping" of defendant, *at the point of a gun,* was an arrest without requisite probable cause. The officer's command exceeded the scope of the precautionary measures which were necessary and reasonable, based upon what the officer knew and upon the actions permissible under a "stop and frisk" (CPL 140.50; cf. *Adams v Williams,* 407 US 143; *Terry v Ohio,* 392 US 1; *People v Cantor,* 36 NY2d 106). The officer had no information that defendant had fired the gun (cf. *People v Arthurs,* 24 NY2d 688). If the officer was fearful that defendant would use the gun when questioned, "the officer * * * need only have approached with hand on his gun" (see *People v Bronk,* 66 Misc 2d 932, 934, affd 31 NY2d 995). The trial court suppressed the gun on the basis of the initial, momentary, arrest; to wit, the seizure of defendant at the point of a gun. Although I, too, find an unlawful arrest, that arrest was attenuated and the intrusion came to an end when the police officer reholstered his revolver and, thereafter, observed the revolver in the open trunk. Its discovery was not, therefore, a fruit of the unlawful police activity (see *Wong Sun v United States,* 371 US 471), and the motion to suppress should have been denied for, as the Court of Appeals, speaking through then Chief Judge Fuld, said, in *People v Fitzpatrick* (32 NY2d 499, 506–507): "In line with this reasoning, the courts have held that evidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of police investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence. (See, e.g., *United States v. Seohnlein,* 423 F2d 1051, cert. den. 399 U. S. 913; *Wayne v. United States,* 318 F2d 205, cert. den. 375 U. S. 860; *People v. Regan,* 30 A. D. 2d 983; *People v. Soto,* 55 Misc. 2d 219; see, also, *Lockridge v. Superior Ct. of Los Angeles County,* 3 Cal3d 166, cert. den. 402 U. S. 910; Note 43 ALR3d 385, 404; Maguire, How to Unpoison the Fruit, 55 J. Crim. L. C. & P. S. 307, 313–317; but cf. *United States v. Paroutian,* 299 F2d 486, 489 [319 F2d 661]; Pitler, 'Fruit of the Poisonous Tree', 56 Cal. L. Rev. 579, 627–630.) In other words, as one commentator put it, the inevitable discovery factor 'permits the government to remove the taint from otherwise poisoned fruit by establishing that the unlawful act from which it resulted was not a *sine qua non* of its discovery.' (Maguire, How to Unpoison the Fruit, 55 J. Crim. L. C. & P. S. 307, 313.)"