■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE SIMMS, Also Known as GEORGE SIMS, Also Known as GEORGE WILKERSON, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, dated March 12, 1976, convicting him of attempted possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. This appeal also brings up for review the denial of defendant's motion to suppress evidence. Judgment affirmed. In the afternoon of June 26, 1975, a Mrs. Gadson telephoned the 73rd Police Precinct in Brooklyn and informed Detective Alfred Scoma that she was concerned for the safety of her husband, who was expected home from work presently. Mr. Gadson was a complainant in an assault case with which Detective Scoma was familiar; Mr. Gadson had been threatened in the courtroom with death or the burning of his home if he testified against a Mr. Harry Watley. Mrs. Gadson told Detective Scoma that a 1965 Cadillac, brown or gold in color, had been parked across the street from her home for about two or three hours, and that she recognized one of the people seated in the car as having been in the courtroom when her husband was threatened. Detective Scoma asked Detective John D. Rupp and Officer William Imperiale, whose tour of duty was about to begin (the 4:40 P.M. to 1:00 A.M. shift), to go to the Gadson residence at Pacific Street near Hopkinson Avenue to investigate. Detective Rupp and Officer Imperiale drove to the Gadson residence and sighted the gold or brown 1965 Cadillac parked across the street, exactly where Mrs. Gadson had told Detective Scoma it was located. The defendant was seated in the front passenger seat; another male was seated, "Indian style", in the driver's seat with his back to the steering wheel; and a female was seated in the rear passenger area. The officers parked their car a few spaces behind the Cadillac and immediately exited from their vehicle with guns and shields drawn. When they reached the Cadillac, Detective Rupp said: "Police officers; don't move." As the police officers looked into the car they saw a sawed-off shotgun in the front passenger area; the weapon was leaning, bell upward, against the transmission hump. All three occupants of the Cadillac were then placed under arrest. The sawed-off shotgun was found to be loaded, and a loaded .38 caliber revolver was discovered partially protruding from a jacket on the rear seat next to where the female had been sitting.

Defendant denied owning the jacket and the female admitted that it was hers. Officer Imperiale searched defendant and discovered seven rounds of .38 caliber ammunition. A suppression hearing was held at which the sole witnesses for the People were Detective Rupp and Officer Imperiale. The defendant took the stand and testified that the shotgun had been wrapped in a blanket and had been secreted under the front seat, wholly concealed from view; the revolver was discovered first and then a search disclosed the shotgun. Defendant denied any knowledge of the shotgun's presence prior to its discovery by the police. The court believed the testimony of the police officers and rejected the testimony of defendant. It denied the motion to suppress, and defendant thereafter entered a plea of guilty. Defendant's main contentions on appeal are that the shotgun was seized as the result of an illegal arrest, and that the evidence of the People was insufficient at the hearing inasmuch as neither Detective Scoma nor Mrs. Gadson testified, and the testimony of Detective Rupp and Officer Imperiale was pure hearsay. If the shotgun were the product of a search, then the latter argument of defendant would be correct, and a remand for a new hearing would be required, at which Detective Scoma and/or Mrs. Gadson would be necessary witnesses. The response of Detective Rupp and Officer Imperiale was proper in conducting the investigation as directed by Detective Scoma because there was a reasonable suspicion that the occupants of the Cadillac (parked on a public street) were about to commit a crime, viz., an assault on Mr. Gadson (see CPL 140.50). However "where on a motion to suppress, a challenge to the receiver's action is made, the presumption of probable cause that originally cloaked that action disappears from the case * * * At that point, bare reliance on an unsubstantiated hearsay communication from the instigating officer or department will not suffice for probable cause. Ultimately, to sustain their burden at the suppression hearing (see *People v. Green,* 33 N Y 2d 496, 500, n. 3), the People must demonstrate that the sender or sending agency itself possessed the requisite probable cause to act" *(People v Lypka,* 36 NY2d 210, 214). The shotgun in evidence in this case, however, was seen in plain view in a public place, as found by the court at the hearing, and thus was not the product of a "search". (See *People v Hoffman,* 24 AD2d 497; *People v Brosnan,* 31 AD2d 975; *Davis v United States,* 327 F2d 301.) There is no need, therefore, for a new hearing. That the police officers approached the Cadillac with guns drawn does not change the result of this case. Under the circumstances, this was a proper self-protective measure; and, in any event, the sighting of the shotgun in plain view was inevitable, and the drawing of the police officers' guns was not a *sine qua non* of its discovery (see *People v Fitzpatrick,* 32 NY2d 499, 505–507, cert den 414 US 1033; *People v Wiggins,* 50 AD2d 910; cf. *People v Earl,* 50 AD2d 289, revd 40 NY2d 941). Martuscello, Acting P. J., Cohalan, Rabin and Mollen, JJ., concur.