■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE FIGUEROA, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered June 17, 1976, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal also brings up for review the denial of

defendant's motion to suppress physical evidence. Judgment reversed, on the law and the facts, motion granted, and the indictment dismissed. On October 4, 1974, at about 3:00 P.M., police officers responding to the scene of a robbery were told by an eyewitness that, within the previous 10 minutes, a robber, described as "a male Puerto Rican with a black jacket" and "a gun" had robbed a store and fled "south". In the next three to five minutes, the police observed two Hispanic males "one avenue west and a half block south" of the robbery scene, who were "walking in a rapid pace" and one of whom, the defendant, was looking over his shoulder as he quickly walked. The police car pulled up to them and the arresting officer shouted: "Police, don't move", while he and his two partners held the defendant and his companion at gunpoint. The arresting officer asked the defendant "his business" and "what he was doing" in the largely Hassidic Jewish neighborhood, but just as the defendant was "about to reply", the officer observed a suspicious looking bulge at his waistband. A search revealed the presence of a loaded weapon, and the defendant was immediately arrested for the illegal possession thereof. It was subsequently determined that the defendant had absolutely no involvement in the robbery which originally motivated the police search and the fateful encounter. Defendant thereafter moved to suppress the gun as the fruit of an illegal search and seizure and Criminal Term denied the motion, stating essentially that the search was proper under the "stop and frisk" statute (CPL 140.50). The defendant was thereafter convicted. The judgment must be reversed and the indictment dismissed. The Court of Appeals has consistently held that the proper analysis of cases such as this is (1) to determine what police action or intrusion has occurred during an encounter, specifically, if the encounter is a mere "stop" to "inquire", as opposed to the substantially greater intrusion of a forcible "seizure" to temporarily "detain" and question and (2) to determine the reasonableness of such police conduct (see *People v Prochilo,* 41 NY2d 759; *People v Cantor,* 36 NY2d 106, 111, 114; *People v De Bour,* 40 NY2d 210, 215, 223). However, "not every encounter constitutes a seizure" by force *(People v De Bour, supra,* pp 216, 217, 223). The index by which we define whether the encounter is a mere "stop" or a forcible "seizure" is the aggressiveness of the police conduct *(People v De Bour, supra,* p 217; *People v Wynn,* 54 AD2d 366, 370). Upon the record, it is inescapably clear that when the police car pulled up to the defendant, and three police officers quickly emerged, guns drawn, one stating, "Police, don't move", the defendant was subjected to a forcible seizure within the meaning of *Cantor* and *De Bour.* Such conduct constituted no "minimal intrusion" into the defendant's life, but rather was conduct which bespoke a "violent * * * [and] forcible apprehension" *(People v De Bour, supra,* p 217). The halting of the defendant at triple gunpoint was even far beyond being the "annoying, frightening, and perhaps humiliating experience" of being forced up against a wall and frisked (see *Terry v Ohio,* 392 US 1, 25; *People v Wynn, supra,* p 370). Equally clear is the fact that the circumstances, in their totality, failed to justify the aggressive action. Not only were the officers initially proceeding upon the vaguest of descriptions, consistent with countless individuals, but they also failed to follow standard operating procedure by having the complaining eyewitness accompany them in their car to personally scrutinize the neighborhood. Furthermore, the officers' personal observations of the suspect should have revealed to them that his dark blue jacket was not in fact the matching "black" jacket of the eyewitness' description. Finally, it is difficult to uphold as a "reasonable suspicion" the finding of the suspect, reportedly "walking rapidly", a mere one and one-half blocks from the scene

of the robbery which the police officers knew had occurred a full 15 minutes prior to the search. "If the officer was fearful that defendant would use the gun when questioned, 'the officer * * * need only have approached with hand on his gun' " (see *People v Wiggins,* 50 AD2d 910, 911 [Shapiro, J., concurring, citing *People v Bronk,* 66 Misc 2d 932, 934, affd 31 NY2d 995]). In retrospect, it may well have been that the primary reason for the focus upon the defendant and his seizure was that his ethnic identity was incompatible with that of the neighborhood, an impermissible reason (see *People v T.,* 48 AD2d 779, 781, revd 39 NY2d 1028 on the dissent of Stevens, P. J., at the Appellate Division). Hence, at the moment that the defendant was forcibly seized and detained, the police did not possess "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant * * * [the] intrusion" *(Terry v Ohio,* 392 US 1, 21, *supra;* cf. CPL 140.50). Hopkins, J. P., Martuscello, Margett and O'Connor, JJ., concur.