## (March 27, 1978)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES McMAHON, Appellant.—Judgment, Supreme Court, New York County, rendered January 10, 1975, convicting defendant, on his plea of guilty, of attempted criminal possession of a weapon as a felony, after denial of suppression, is affirmed. (See *People v Kinlock,* 43 NY2d 832, affg 55 AD2d 627; *People v McLaurin,* 43 NY2d 902, revg 56 AD2d 80, on dissenting opn of Nunez, J.; *People v Lypka,* 36 NY2d 210, 213.) Concur—Silverman, Evans and Markewich, JJ.; Murphy, P. J., and Fein, J., dissent in a memorandum by Fein, J., as follows: Police Officer Martin Johnson, the sole witness at the suppression hearing, testified that, upon entering the station house on November 12, 1973 at approximately 9:00 P.M., he was given a piece of paper by Officer Cummings, describing an individual "believed to have a gun" at Little Peter's Bar and Grill at 25 Third Avenue, "Charles McMahon, male, white, 23, dirty blond hair, a bruise at the base of his nose * * * wearing a brown knit shirt, black pants and * * * carrying a cane." The note was never vouchered and was not produced at the hearing. Cummings told Johnson he had received the information by telephone from Sergeant Corrigan of the 14th Narcotic Unit in Brooklyn, who had obtained it from an unidentified registered informant. Johnson and two other nonuniformed officers proceeded to the bar, arriving there about 15 minutes later. Defendant, a male about 23 years of age, wearing a brown knit shirt and black pants, was the only white person present in the bar. There was a cane and a coat on a nearby stool. Defendant was standing, having a drink. Johnson had never seen or heard of him before that night. Johnson and the two other officers approached defendant from the rear, Johnson's partners stopping on either side of defendant and Johnson remaining directly behind him. After displaying their shields and announcing they were police officers, Johnson asked defendant if he was Charles McMahon. At the same time Johnson placed his hands on McMahon's hips. With his left hand, Johnson felt a hard object, believed to be a gun. Defendant said he was Charles McMahon. Johnson told his partners he felt a gun. Each grasped defendant's hands while Johnson lifted defendant's shirt and removed a gun from his pants. Some time thereafter the officers noticed the bruise at the base of defendant's nose. The suppression court found the officer's uncontradicted testimony to be credible and, accordingly, denied the motion to suppress. The central issue is whether the anonymous tip, albeit from an alleged registered but unidentified informant, was sufficient to furnish probable

cause for the search. Neither Officer Cummings, nor Sergeant Corrigan, nor the registered informant appeared to testify at the suppression hearing to establish probable cause for the warrantless search and the reliability of the information upon which Officer Johnson acted. By its affirmance of the denial of the motion to suppress, the majority inappropriately permits unsubstantiated hearsay to establish probable cause for the search and the seizure. *People v Lypka* (36 NY2d 210) reversed the denial of a motion to suppress evidence seized during a warrantless automobile search and remanded for further proceedings. In that case Undersheriff Brewer testified at the suppression hearing that he had received a telephone call from a Detective Holhman of the Lancaster, Pennsylvania, Police Department, furnishing information that defendants were en route to Seneca County. The interstate police bulletin furnished a detailed list of weapons believed to be in defendants' possession and included a description of the vehicle. The court observed that a police officer may properly act in reliance upon a radio bulletin or telephone alert from a fellow officer or department if it prima facie furnishes probable cause, justifying a reasonable search. However, recognizing the bulletin as unsubstantiated hearsay, the court found this presumption of reliability to be rebuttable, stating (p 214): "But where on a motion to suppress, a challenge to the receiver's action is made, the presumption of probable cause that originally cloaked that action disappears from the case. * * * At that point, bare reliance on an unsubstantiated hearsay communication from the instigating officer or department will not suffice for probable cause. Ultimately, to sustain their burden at the suppression hearing * * * the People must demonstrate that the sender or sending agency itself possessed the requisite probable cause to act." Here, as in *Lypka,* there was no proof at the suppression hearing that the communicating officer possessed necessary probable cause to support the search. Officer Johnson clearly acted upon a fourth-hand tip. Neither he nor Officer Cummings could have known whether the information furnished was reliable or accurate. Only Sergeant Corrigan could have sufficiently satisfied the People's burden of establishing probable cause, in the absence of the informant. Here, as in *Lypka,* the search was not sustained by the People's proof at the suppression hearing. *People v Kinlock* (43 NY2d 832, affg on opn of Justice Balbach, at Criminal Term) is not controlling. The *Kinlock* search and seizure was sustained, not on the ground of probable cause, but rather on the basis of the common-law right to inquire and the "stop and frisk law." (CPL 140.50.) There the arresting officer received an anonymous phone call describing a male Negro, named Leroy, approximately six foot, with a long plaid coat with a fur collar at a street corner in Queens, "supposed" to have a rifle. This report clearly warranted further investigation. Its reliability was corroborated by the independent observations of the arresting officer when he arrived at the designated street corner located in a commercial and residential area, where stores were open sometime between 5:30 and 6:00 P.M. on New Year's Eve. After Kinlock, who fit the description, identified himself as "Leroy", the officer patted him down and discovered the rifle. Here, however, there was neither a prior identification nor corroboration, nor a patdown nor a frisk. There was a physical restraint first. Without any evidence of a bulge or otherwise exigent circumstances, except for the tip, and while defendant was standing at the bar having a drink, Johnson placed his hands upon defendant's hips and discovered the gun prior to or at the same time as defendant acknowledged he was Charles McMahon. Johnson and the other officers had surrounded defendant. This amounted to a seizure. *(Terry v Ohio,* 392 US 1; *People v Cantor,* 36 NY2d

106, 111, 112.) On the suppression hearing, the unsubstantiated hearsay testimony was insufficient to establish probable cause for the seizure. *(People v De Bour,* 40 NY2d 210). On remand there may be sufficient evidence to meet the burden of proof on this issue. As noted in *Kinlock,* where probable cause is lacking, the forcible seizure may be justified if there is a ground for reasonable suspicion that criminal activity is at hand. *(Terry v Ohio, supra;* CPL 140.50.) This was the ground for sustaining the *Kinlock* search and seizure. Except for the tip, here there was no objective evidence even suggesting criminal activity. On this record the seizure and subsequent search cannot be justified by the common-law right to inquire, or the "stop and frisk" law. *(People v La Pene,* 40 NY2d 210; *People v Stewart,* 41 NY2d 65; *People v Cantor, supra.)* The "common-law power to inquire does not include the right to unlawfully seize" *(People v Cantor, supra,* p 114). The stop and frisk cannot be validated by what it produces any more than a search can be made lawful by what it yields. *(People v De Bour, supra; People v Sobotker,* 43 NY2d 559.) Intrusions and invasions interdicted by the Fourth Amendment cannot be justified by hindsight. Nor can the search and seizure be justified under *People v McLaurin* (43 NY2d 902, revg 56 AD2d 80, 84, on the dissenting opn of Nunez, J., which emphasized that we must examine the predicate for police action to determine whether it " 'justified the extent of the official intrusion on the individual.' *(People v Stewart* and *People v Williams,* 41 NY2d 65, 66.)" Where the circumstances justify the officer in the belief the person stopped is armed and the officer is in danger a limited search is warranted *(People v Taggart,* 20 NY2d 335, 337) to allow the officer to pursue his investigation without fear of violence. *(Sibron v New York,* 392 US 40, 63; *Terry v Ohio,* 392 US 1, 27, *supra;* CPL 140.50, subd 3.) The "issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *(Terry v Ohio, supra,* p 27.) In *McLaurin* as in *Kinlock (supra),* the police responded to an anonymous tip describing a man with a weapon at a designated street location during the night. In *Kinlock,* a man with a rifle on a street corner in the early evening; in *McLaurin,* a man with a gun leaving or entering a building at midnight. The presence of an armed suspect on the street at night presents a different situation than appears here. It requires a different response by law enforcement officials. Moreover, in both *McLaurin* and *Kinlock,* one police officer alone frisked or patted each defendant down in the street, discovering the weapon on his person in accordance with the anonymous tip which had been received, a far less personal intrusion than the forcible physical seizure in a bar by the three police officers in our case. I would remit the case for further proceedings on the motion to suppress in accordance with this memorandum, with the appeal held in abeyance pending a new determination on those proceedings *(People v Lypka,* 36 NY2d 210, *supra).*