■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GEORGE WHYTE, Also Known as DAVID WHITE, Respondent.—Appeal by the People from an order of the Supreme Court, Queens County, dated January 16, 1978, which, after a hearing, granted defendant's motion to suppress as evidence a gun allegedly seized from his person and certain statements allegedly made by him. Order modified, on the law and facts, by adding thereto, immediately after the word "granted", the following: "except that the motion is denied as to the gun and defendant's first, volunteered statement (denying ownership of the weapon)". As so modified, order affirmed. While at the scene of a fire during the early morning hours of December 31, 1977, the arresting officer (Joseph Romano) was approached by an unidentified middle-aged man who informed him that there were two men fighting "up the block by the fire" and that one of them was armed with a gun. The officer went to investigate and was approached en route by a fire lieutenant, who stated that several persons were fighting in the rear of the burning building and had refused his order to disperse. Upon investigating and finding no one there, Officer Romano started back toward the street when the informant approached him for a second time and, pointing to two men standing from 25 to 40 feet away stated, "The guy with the coveralls, he has got the gun." The officer looked and observed two men standing approximately two feet away from each other and noted that the one wearing coveralls (the defendant) had his right hand at his side near the rear and his left hand, clenched in a fist, pointed at the other man. Although the officer was unable to hear what was being said, he testified as the sole witness at the suppression hearing that the two men were speaking loudly or yelling at each other in an apparent dispute. The officer approached and, standing between them, asked the defendant if he had a gun. The defendant responded "No." The officer thereupon touched the defendant's right side (where defendant's hand had previously been), and felt a hard object in the pocket of his baggy coveralls which he "believed" to be a gun. The officer explained that he would not have taken this action absent the informant's allegation, nor would he have believed in its absence that the object which he felt was a gun. Nevertheless, based on the information which he had received, the officer "presumed" that the object which he detected was a weapon and placed his hand into the defendant's pocket and removed a loaded revolver. At this point the officer arrested the defendant, placed him in handcuffs and proceeded to lead him to the patrol car. En route, the defendant allegedly protested that "It ain't my gun", to which the officer responded "[Then w]hose is it?" Defendant replied that it belonged to his wife. The defendant was subsequently taken to the station house, where he was informed of his *Miranda* rights and "booked". On the basis of this evidence, Criminal Term ruled that the weapon had been illegally seized and that the defendant's statements ought to be suppressed as fruit of the poisoned tree. We disagree. In our view, the officer's response to the situation, at least insofar as it involved seizure of the weapon, comported fully with the requirements of law. Upon being apprised on the second

occasion by an unidentified informant who was physically present at the scene of the fire (and therefore subject to arrest for providing false information pursuant to section 240.50 of the Penal Law) (see *People v Crespo,* 70 AD2d 661) that the person standing before him in coveralls and engaged in an apparent dispute with another was possessed of a weapon, it was reasonable for Officer Romano to approach the defendant (who was, incidentally, the only person so attired) and, after brief inquiry, make a limited search not to discover evidence of a crime, but to insure his own safety, i.e., to permit him to pursue his investigation without fear of violence (see *People v McLaurin,* 43 NY2d 902; *People v Kinlock,* 43 NY2d 832; *People v McMahon,* 61 AD2d 958; cf. *People v Bronk,* 31 NY2d 995). Moreover, based on the information then at his command, which included partial confirmation by the fire lieutenant of the informant's original report of a fight near the scene of the fire, plus the fact that the identical informant had approached him for a second time only moments later and reaffirmed his report of a man with a gun, this time specifying the defendant as the malefactor, it was also reasonable for the officer to "presume" or "believe" (despite defendant's protestation to the contrary) that the object which he detected in the defendant's rear pocket was a weapon, and then to reach in and remove it. Accordingly, we conclude that the seizure of the weapon herein was proper (cf. *People v Stewart,* 41 NY2d 65; *People v La Pene,* 40 NY2d 210), and that the ensuing arrest was lawful. Turning briefly to the issue regarding the admissibility of defendant's postarrest statements, it is our belief that the first, spontaneous declaration that "It ain't my gun" was unsolicited by Officer Romano and therefore admissible, but that the subsequent inquiry as to the gun's true owner without first advising the defendant of his rights pursuant to *Miranda v Arizona* (384 US 486) cannot be sustained. Accordingly, defendant's response to the officer's question was properly suppressed. Hopkins, J. P., Suozzi, Gulotta and Cohalan, JJ., concur.