■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAWRENCE MITCHELL, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered June 6, 1978, convicting him of burglary in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress certain physical evidence and oral and written statements. Judgment affirmed. Shortly before 5:00 A.M. on the morning of December 23, 1975, John Smith, a janitor employed at the RKO Twin Theater on Rockaway Turnpike in Lawrence, arrived at work to discover that an upstairs office had been broken into. Unable to use an inside phone, he ran into the street where he encountered Police Officer George Hassett, whom he informed of the burglary. Subsequently, at approximately 4:50 to 5:00 A.M., Police Officer Hassett broadcast his interruption of patrol to investigate the aforesaid burglary, at which point Police Officer Federoff arrived at the scene in a patrol car. After conferring briefly with Smith and Hassett, Police Officer Federoff returned to his patrol car and drove around to the side of the building in an effort to discover evidence relating to the burglary. While on the north side of the building he saw something move and, while the officer was not able to ascertain its identity, he did opine that its height was inappropriate for an animal. Officer Federoff then drove around the rear of the theater to the other side, where he discovered two packages containing cartons of cigarettes lying on the ground. It was at this point that the officer broadcast over his radio the discovery of possible proceeds of the burglary, as well as the possiblity that the suspects might still be in the area. Police Sergeant Francis Sochor, who had been on patrol in Woodmere, overheard the aforesaid broadcasts and was in the process of driving to the scene along Rockaway Turnpike when he observed the defendant and another man standing on the property of a Gulf station located just off the main road, approximately one quarter of a mile south of the movie theater. The time was estimated to be 5:00 A.M., or about 5 to 10 minutes after his receipt of the radio messages. The neighborhood surrounding the Gulf station was strictly commercial in nature, so that all of the stores, including the gas station, were closed. There was an all night diner located across the street, however. No vehicles were observed in proximity to the two men, nor was there any vehicular or pedestrian traffic in the immediate vicinity. When Sergeant Sochor first spotted the two men, one of them, the defendant, was bending down. As he drove his patrol car into the gas station, however, the defendant straightened up, and as soon as the sergeant got out

of his vehicle and began walking in their direction, the defendant and his companion began walking away. When the sergeant got to the spot where the two men had been standing he observed a hammer, two pry bars and a screwdriver lying in the snow. At this point, the officer directed the two men (who had come to a stop) "back over to the police car" and inquired of them whether they were the owners of the four tools. Both men answered in the negative. The officer then asked the two men what they had been doing and while one of them answered that they were taking a walk, the other answered that they were coming home from work. Being concerned for his safety, the sergeant then frisked the two men for weapons, and feeling a "hard object" in the defendant's pocket, reached in and discovered a penlight flashlight and a roll of tape. A similar frisk of the defendant's companion revealed a chocolate bar and a key. The two men were thereupon arrested and driven to the local precinct, where, after receiving his *Miranda* warnings, the defendant made certain incriminating statements and certain physical evidence was obtained for analysis. On appeal, defendant maintains that the evidence obtained from himself and his companion was the product of an illegal search and seizure and that it should have been suppressed on his pretrial motion. We disagree. At the time of the instant arrest, Sergeant Sochor was aware of the fact that a burglary had been committed at the RKO Twin Theater in Lawrence and had reasonable grounds to believe that the perpetrators had abandoned the proceeds and might be found in the general area (see *People v Lypka,* 36 NY2d 210). With this knowledge at his disposal and while responding to the scene of the crime, the sergeant came upon the defendant and his companion, who were observed standing alone on the property of a closed gas station in a commercial district in which only an all night diner was open. Importantly, this observation was made *at a place located within one quarter of a mile of and on the same street as the burglarized premises,* and within 10 minutes of the radio broadcast indicating that the perpetrators might still be found in the area. Moreover, at the time of the sergeant's initial observation, the defendant and his companion were in a static position, i.e., they were neither in the process of approaching nor retreating from the diner, which was in any event located on the other side of the street. Although originally "bending down [or] crouched, his hands down * * * towards the ground", the defendant was seen to straighten up at the approach of the marked patrol car, and upon the sergeant's alighting therefrom the two men began walking away. They took "several steps" before stopping and, as the sergeant approached them, he observed burglar's tools in the snow where the defendant had been kneeling. At this point, the sergeant directed the two men to his patrol car, which was located "a couple of feet" away, and asked them to explain their conduct (see CPL 140.50). Both men disclaimed ownership of the tools and, while one of them stated that they were "taking a walk", the other claimed that they were "coming home from work." The succeeding "frisk" produced two items commonly associated with burglaries (to wit, a penlight flashlight and a roll of tape), whereupon the two men were arrested and driven to the precinct. On these facts, it is our belief that notwithstanding the absence of a description of the perpetrators, the congruence of time, place and circumstances invested Sergeant Sochor with sufficient objective evidence " 'to induce an ordinarily prudent and cautious man * * * to believe that criminal activity [was] at hand'" *(People v Sobotker,* 43 NY2d 559, 564, quoting from *People v Cantor,* 36 NY2d 106, 112-113), even prior to the suspects' totally inconsistent accounts of their presence in the

area. We therefore conclude that the initial "stop" was proper.* (See CPL 140.50; see, also, *People v Marner,* 47 NY2d 982; cf. *People v Sipes,* 59 AD2d 789; *People v Figueroa,* 58 AD2d 655.) In addition, it is our further belief that given the lateness of the hour, the character of the surrounding area and the unfavorable ratio of officers to suspects, the sergeant's expressed fear for his personal safety was justified and the succeeding, limited search for weapons was also proper (see *People v Mack,* 26 NY2d 311, 317; see, also, *People v Moore,* 32 NY2d 67, 70). Finally, but not least importantly, we believe that the totality of the evidence known to the sergeant furnished probable cause for the defendant's arrest (see *People v Valentine,* 17 NY2d 128). As for the search of defendant's companion, we hold that the defendant was not an aggrieved person with respect thereto and, accordingly, lacked the requisite standing to move to suppress the evidence derived therefrom (see *Brown v United States,* 411 US 223; *People v Rodriguez,* 58 AD2d 612). Titone, J. P., Lazer, Gibbons, Gulotta and Cohalan, JJ., concur.

---

* Although not specifically argued, we believe that the foregoing result may be predicated on a wholly independent ground, i.e., the existence of reasonable suspicion that the defendant was committing, had committed or was about to commit the class A misdemeanor of possession of burglar's tools (Penal Law, § 140.35).