THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NOEL
EARLEY, Appellant.

Second Department, July 28, 1980

APPEARANCES OF COUNSEL

*Michael P. Joseph* for appellant.

*John J. Santucci, District Attorney (Aley Z. Alexander* of counsel), for respondent.

### OPINION OF THE COURT

MOLLEN, P. J.

This appeal concerns the propriety of a warrantless arrest and seizure predicated entirely upon information provided by a citizen informant.

The defendant was charged with the possession of a sawed-off shotgun, and he moved, *inter alia,* to suppress the weapon. At the hearing held on the motion, Detective Peter Cifuni testified that, on the evening of June 6, 1976, he received a telephone call from one John Brisco, a cab driver, who informed him that he was going to pick up a man whom he feared because the man "carries a shotgun". Brisco said that he would call back before he left to pick the man up and he suggested that the detective follow him at that time. The detective agreed and, later that night, he and another officer, dressed in plainclothes and driving an unmarked car, followed Brisco to a one-family home in a residential area of Queens. From a distance of some 75 yards the detectives observed a man, later identified as the defendant, emerge from the house and enter the passenger side of Brisco's taxicab. When the cab drove off, the detectives pursued and, after only a block and a half, they signaled for the cab to stop. Detective Cifuni thereupon exited his car, "ran" to the passenger side of the cab, and "pulled" the defendant out of the vehicle. As he did so, he saw what he thought to be the stock of a gun under the front passenger seat of the cab. He immediately subjected the defendant to a search, finding five rounds of ammunition in his right-hand pocket. He then placed the defendant in hand-

cuffs, and reached into the cab, removing a sawed-off shotgun from beneath the front passenger seat.

Detective Cifuni testified that he had spoken with Brisco only three times during the preceding year. Brisco was neither registered nor paid as an informant, but on one prior occasion he had provided information which led to the arrest and conviction of an individual in Queens County. The detective acknowledged that he knew nothing about Brisco beyond what he had been told by Brisco himself. He could not say, for example, whether he had a criminal record.

The detective testified further that he had observed no tell-tale bulge or other sign of a weapon when the defendant came out of the house and walked to the cab. As to his subsequent encounter with the defendant, Detective Cifuni was cross-examined as follows:

"Q What did you do after you got out of your car, if anything?

"A I ran around to the side where the passenger was, and I took him out of the car.

"Q You took him right out of the car; is that right?

"A Right out, yes, sir.

"Q Did you search him when you pulled him out of the car?

"A Yes, sir.

"Q At this point, you hadn't seen any gun, had you?

"A When I pulled him out of the car and the door opened, I saw the butt of a gun under a seat.

"Q You opened the door; is that correct?

"A Yes.

"Q And you pulled him out?

"A Yes, sir.

"Q Are you saying that as you pulled him out, you noticed the butt of the gun?

"A Yes, because I was looking.

"Q You were looking for a butt of a gun, were you not?

"A I was looking, because that was my information: the man had a gun.

"Q That was your information?

"A That's correct.

"Q Up until that point, you saw no gun?

"A That's correct."

Following his arrest, the defendant was advised of his constitutional *(Miranda)* rights, and he denied ownership of the weapon. However, when the detective remarked to him that "if [the shotgun] isn't yours, it's the cab driver's", the defendant relented and said, "I will take the weight for the shotgun."

At the close of the hearing, all arguments were framed in terms of whether Detective Cifuni had probable cause to arrest the defendant. The court denied the motion to suppress and, following a jury trial, the defendant was convicted as charged. We now reverse.

Under the facts adduced at the suppression hearing, justification for Detective Cifuni's actions depended entirely upon the information he received from Brisco since he had absolutely no independent knowledge linking the defendant to criminal activity of any kind. Indeed, the detective testified that he had never seen the defendant prior to the night in question, and the record makes clear that, before seizing him in the taxicab, the officer had made no observations which would indicate or suggest the defendant's possession of a weapon or commission of any other offense.

It is now well settled that where the prosecution seeks to establish probable cause solely through information provided by an informant, there must appear in the record "(1) some of the underlying circumstances from which the informant concluded that illegal activities were taking place, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible or reliable." *(People v Wirchansky,* 41 NY2d 130, 131; see, also, *Aguilar v Texas,* 378 US 108, 114.) Although this rule is most often applied when evaluating an application for a search warrant, it is no less relevant in assessing the propriety of a warrantless arrest and search based upon information provided by an informant. (See *People v Elwell,* 50 NY2d 231; *People v West,* 44 NY2d 656, 657.)

Here, there was evidence supporting Brisco's personal reliability in that he was shown to have previously provided information which led to an arrest and conviction. However, the first prong of the test, the so-called "basis of knowledge test" (see *People v Hanlon,* 36 NY2d 549, 556), was not satisfied, for the record of the suppression hearing is barren of any evidence showing the basis for Brisco's accusation. It might be argued that the very nature of the accusation

suggests that it was based upon personal observation, and it is true that an informant's information may be so detailed as to be self-verifying. (See, e.g., *People v Hanlon, supra,* p 557; *United States v Ventresca,* 380 US 102, 108-109.) However, Brisco's report here could well have been nothing more than an expression of his belief, founded upon unsubstantiated rumor or hearsay, that the defendant was simply in the habit of carrying a weapon. (Cf. *People v Elwell, supra.*) And under such circumstances, we cannot presume that the accusation was predicated upon personal knowledge. (See *People v West, supra,* p 657; *People v Hendricks,* 25 NY2d 129, 137.) Significantly, Detective Cifuni had ample opportunity to elicit the basis for Brisco's information. Unlike situations in which information is provided anonymously or in emergency settings, the detective here was not hampered by any limitations upon his access to the informant. (Cf. *People v McLaurin,* 43 NY2d 902, revg 56 AD2d 80 on the dissenting opn of NUNEZ, J.; *People v Sustr,* 73 AD2d 582.) Brisco apparently called the detective twice on the evening in question, and the detective testified that he had a telephone number at which to reach him. Yet the detective never inquired as to the basis of Brisco's accusation—at least he never reported such an inquiry at the suppression hearing.

Moreover, the information itself suffered from a lack of specificity. In the usual case, an informant will report that an identifiable individual is committing a specific crime at a certain place and time. (See, e.g., *People v Elwell,* 50 NY2d 231, *supra; People v Arthurs,* 24 NY2d 688; *People v Whyte,* 71 AD2d 631.) A careful reading of the record here, however, leads us to conclude that Brisco reported that the defendant would be carrying a weapon essentially because he believed it was the defendant's practice to do so.* Without additional

---

* The detective described Brisco's communication both on direct and cross-examination. On direct examination, he stated:

"I received a phone call from a source, who is unknown to me, and he told me that he was going to pick up a man that he was afraid of, because the man carries a shotgun. He told me that he was supposed to pick up the man that night. It was a Sunday night.

"He said when he gets the call to pick up the man, he was going to call me; that I should follow him; that when the man gets in the car, he's going to have a shotgun."

On cross-examination, the detective testified:

"Q And this source told you what?

"A That he was going to pick up a man that he's afraid of, because the man carries a sawed-off shotgun with him."

information pointing to the defendant's actual possession of a weapon on the specific night in question, probable cause could not be established. To hold otherwise would be to permit the police to rely on a general accusation of criminal behavior to justify a full-blown search of an individual wherever and whenever he is encountered. (See *People v Jackson,* 64 AD2d 673.)

It is also material that the lack of specificity in the accusation robbed it of much of its circumstantial reliability. Where, for example, a citizen asserts to police that an individual is carrying a weapon at a specific time and place, that information may be viewed as circumstantially reliable since, if it proves false, the citizen himself would be subject to a charge of falsely reporting an incident. (See Penal Law, § 240.50, subd 3, par [b]; *People v Moore,* 32 NY2d 67, 71, cert den 414 US 1011; *People v Hyter,* 61 AD2d 990, 991; *People v Crespo,* 70 AD2d 661.) In contrast, where, as here, the report is simply that the individual is generally armed, and he proves not to be on a specific occasion, a criminal charge against the informant would not lie.

Under the totality of the circumstances at bar, therefore, and in the complete absence of any evidence of independent police knowledge or observations linking the defendant to criminal activity, we conclude that Detective Cifuni did not have probable cause to make an arrest when he seized the defendant in the cab. (See *People v Elwell,* 50 NY2d 231, *supra.)* Our inquiry does not end there, however, for the District Attorney no longer seeks to justify the seizure on the basis of probable cause. Instead, he urges on appeal that the defendant was initially subjected, not to an arrest, but only to a forcible detention properly founded upon a reasonable suspicion. (See, e.g., *People v De Bour,* 40 NY2d 210.) He argues that the defendant's subsequent arrest was lawful because the detective's reasonable suspicion blossomed into probable cause upon his observation of the shotgun in plain view protruding from beneath the passenger seat of the vehicle. We disagree.

It is true, as the District Attorney contends, that the rule by which we assess informants' information is somewhat less exacting where the People seek to establish only reasonable suspicion rather than probable cause. As the Court of Appeals has said: "since the standard of reasonable suspicion to stop is lower than the standard of probable cause for an arrest, a less stringent standard should apply for screening tips in the stop

context—i.e., an officer may stop on less or different information than probable cause would require." *(People v Moore,* 32 NY2d 67, 70, cert den 414 US 1011, *supra.)* We are of the view, however, that, even where the prosecution seeks to demonstrate only reasonable suspicion, it remains essential that at least some showing be made of the basis of the informant's knowledge. (Cf. *People v La Pene,* 40 NY2d 210, 224-225.) And this is especially true where, as here, the officer to whom the information is given has a full and unhurried opportunity to ascertain from the informant the facts upon which his accusation is based.

Moreover, as described at the suppression hearing, the encounter here was something more than merely a stop for questioning. As reflected by his own testimony, the detective "pulled" the defendant out of the cab as soon as it stopped, and immediately subjected him, not to a protective pat-down or frisk, but to a full-blown search—all without making a single inquiry. (Cf. *People v La Pene, supra,* p 226.) We note additionally that the detective's actions were not mandated by the exigencies of the circumstances confronting him. The defendant was not in the midst of a group of people (cf. *People v Taggart,* 20 NY2d 335, app dsmd 392 US 667), and there was no suggestion that he had used or was about to use the weapon in the perpetration of a crime. As the Court of Appeals has observed: "There is a difference of significant degree between a report only that a person has a gun in his possession and another report that a person not only has a gun but that he has just used it for the commission of a crime." *(People v Green,* 35 NY2d 193, 196.)

Finally, even if we were to find a proper stop under these facts, we would nevertheless be compelled to reject the People's contention that the detective's discovery of the weapon in plain view legitimately raised the level of inference from reasonable suspicion to probable cause. The plain view exception to the warrant requirement may be applied only where the evidence seized is observed inadvertently by an officer positioned where he is entitled to be. (See *Coolidge v New Hampshire,* 403 US 443, 466; *People v Spinelli,* 35 NY2d 77, 80-81; *People v La Borde,* 66 AD2d 803, 804.) Here the officer testified that he had seen the stock of the shotgun under the seat because he was looking for a weapon. The element of inadvertence, therefore, is clearly absent, and the discovery of the weapon must be deemed the product of a search. (Cf.

*People v Smith,* 42 NY2d 961; *People v Allende,* 39 NY2d 474.)

In holding that suppression is required herein, we do not retreat from our firmly held view that an officer undertaking a legitimate inquiry is entitled to proceed free of unreasonable risk of personal harm. (See, e.g., *Adams v Williams,* 407 US 143, 146.) Faced with an individual suspected of a violent or serious crime, he may approach with weapon drawn or at the ready (see, e.g., *People v Brnja,* 50 NY2d 366; *People v Wiggins,* 50 AD2d 910; *People v Bronk,* 66 Misc 2d 932, 934, affd 31 NY2d 995) or he may conduct a limited frisk for weapons at the very outset of the encounter. *(Terry v Ohio,* 392 US 1; *People v Mack,* 26 NY2d 311.) Here, however, the detective took measures which were beyond those reasonably necessary for self-protection. Acting on generalized information, he physically seized the defendant and effected an immediate search without so much as addressing a single inquiry either to the defendant or, perhaps more importantly, to Brisco who might have confirmed the presence of a weapon in the cab. In our view, therefore, the precipitous action taken by the detective was not reasonably related in scope or intensity to the information he possessed. (See *People v Bronk,* 31 NY2d 995, *supra; People v Cantor,* 36 NY2d 106; *People v La Pene,* 40 NY2d 210, *supra.)* Accordingly, the motion to suppress must be granted and the indictment dismissed.

GIBBONS, MARTUSCELLO and WEINSTEIN, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered September 28, 1977, reversed, on the law and the facts, suppression motion granted, indictment dismissed and the case is remitted to Criminal Term for the purpose of entering an order in its discretion pursuant to CPL 160.50.