THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ERNEST GRANT, Appellant.

Second Department, November 16, 1981

### APPEARANCES OF COUNSEL

*Levine, Hoffman & Crispo (Hillel J. Hoffman* of counsel),
for appellant.

*Eugene Gold, District Attorney (David M. Dince* of coun-
sel), for respondent.

### OPINION OF THE COURT

GIBBONS, J.

The defendant appeals from a judgment of the Supreme
Court, Kings County, convicting him of robbery in the first
degree (six counts), robbery in the second degree (two
counts) and criminal possession of a weapon in the second

degree, upon a jury verdict, and imposing sentence. The appeal brings up for review, *inter alia,* the denial of defendant's motion to suppress a .22 caliber revolver.

On January 25, 1979 defendant and two other males, each armed with guns, entered a sporting goods store at 1580 Fulton Street, Brooklyn, New York. Present in the store were the owner, Randy Young, his friend, Felicia Campbell, and a co-worker, Benjamin Colon. Money was taken from Colon and Young at gunpoint, and money was also taken from the cash register.

Responding to a call that a robbery was in progress, Police Officers Roland Klink and Franklin Holmes went to the store. Officer Klink approached the front of the store and noted that it was locked. He looked inside and saw several people in the rear. Defendant then approached the door and said, "What do you want?" He made no effort to open the door and immediately returned to the rear of the store. Officer Klink observed the defendant for a few seconds, at a distance of a few feet, in a well-lit area. The officers then forced their entry into the store. Shots were fired at the officers by the perpetrators. The officers returned the fire, and the robbers fled the scene from the rear of the store.

A radio call for assistance was received at about 3:30 P.M. by Police Officers Felix Stanton and John Luffman, who then proceeded to the scene of the robbery, where they met Officer Klink. Klink told the officers that he had been shot at by three black males, two of whom were tall and one of whom was short, and gave a partial clothing description. Upon observing two sets of footprints in the newly fallen snow, Officers Stanton and Luffman followed these footprints to an abandoned building at 1568 Fulton Street, four buildings from 1580 Fulton Street. The footprints led up the outside stairs of the building. They conducted a search of the building, finding no one until they searched the last room on the top floor, which was either a closet or a bathroom. Officer Luffman pushed open the door, and Officer Stanton, upon entering the room, which was dark and windowless, observed the defendant, whom he described as a black male, crouched down in a corner trying to hide, with his hands in his coat pockets. Stanton's gun

was drawn. Luffman ordered the defendant not to move. Stanton described what ensued, as follows: "I grabbed for his arms. He fell back. I fell down on top of him and I felt something in his coat pocket on my leg". He then reached into defendant's left coat pocket and removed a .22 caliber revolver. The defendant was then placed under arrest. The search also uncovered another perpetrator, hiding behind a door on the top floor, and he was also arrested.

■ On this record Criminal Term properly denied defendant's motion to suppress the revolver.

Under the rationale expressed in *People v Cantor* (36 NY2d 106, 111), the reasonableness of a particular search and seizure requires the court in its inquiry to "consider whether or not the action of the police was justified at its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible". Here, within a few minutes after the commission of the robbery, the arresting officer, Stanton, was informed by Officer Klink, at the scene of the crime, that three black perpetrators had just fled from the rear of the store after exchanging gunfire with the police. He observed and immediately followed two sets of footprints in the snow which led from the place of the robbery to a nearby abandoned building where, in the course of his pursuit, he encountered a black person hiding in the corner of a dark room with his hands in his pockets and another person hiding behind a door.

At the time Officer Stanton confronted the defendant he had a reasonable basis to believe that he was coming face-to-face with one of the perpetrators of an armed robbery, who, while trying to hide in a dark room, kept his hands in his pockets. Under these circumstances, the officer was justified in fearing that any request for information might well be answered with a bullet. Not only was he justified for his own safety to approach with his weapon drawn, but, inasmuch as the defendant maintained his hands in his pockets, the physical effort in grabbing his hands to disarm him was appropriate. He could reasonably believe that the pocket harbored a weapon and delay could be fatal.

In *People v Finlayson* (76 AD2d 670, 678-679), this court, held, as follows: "An officer may take appropriate self-

protective measures when he lawfully confronts an individual *and reasonably believes him to be armed* or otherwise dangerous to the officer or others. The usual police response will be to conduct a frisk, patting the individual's clothing in search of a weapon. (E.g., *Terry v Ohio,* [392 US 1] *supra; People v Mack,* 26 NY2d 311.) Where an immediate frisk is not feasible, however, the officer will be justified in approaching the suspect with weapon drawn or at the ready. (See *People v Chestnut,* [51 NY2d 14] *supra; People v Brnja,* 50 NY2d 366; *People v Griffith,* 48 NY2d 1009; *People v Huffman,* 41 NY2d 29, 34; *People v Shivers,* 21 NY2d 118, 122; *People v Earley,* [76 AD2d 335] *supra; People v Jackson,* 72 AD2d 149; *People v Simms,* 57 AD2d 579, 580, *supra; People v Wiggins,* 50 AD2d 910; *People v Bronk,* 66 Misc 2d 932, 934, affd 31 NY2d 995.) The key question in all cases remains whether the protective measures taken by the officer were reasonable under the circumstances. *(People v Chestnut, supra,* p 23.)" (Emphasis added.)

The ensuing contact with defendant's coat pocket by the police officer, in which he "felt something", provided a reasonable basis upon which he could conclude that it contained a weapon and that the prevailing exigency warranted its removal. It would be unrealistic to require him to assume the risk that, under the circumstances, defendant's conduct was innocuous and innocent *(People v Benjamin,* 51 NY2d 267, 271).

We also conclude that the totality of the information known to Officer Stanton and the interrelationship of the shortness of time and distance and the circumstances prevailing provided sufficient probable cause for defendant's arrest *(People v Mitchell,* 75 AD2d 626, 627). Knowledge on the part of Officer Stanton that an armed robbery had recently taken place in the near vicinity during which the perpetrators exchanged gunfire with the police, coupled with his confrontation within a few minutes with the defendant in a crouching position and hiding in the corner of a dark room in a nearby abandoned building, after following fresh footprints leading from the scene of the robbery, and the discovery of the weapon on the defendant, was sufficient probable cause to move a reasonable, cau-

tious and prudent police officer to conclude that a crime had been committed and that the defendant was one of the perpetrators *(People v Brady,* 16 NY2d 186, 189; *People v Valentine,* 17 NY2d 128, 132).

The intensity of the escalating police response by Officer Stanton was reasonably related to the information he possessed at the inception of his pursuit and also to the information he later obtained as his confrontation with the defendant continued to unfold *(People v De Bour,* 40 NY2d 210).

We have examined defendant's other contentions and find them to be without merit.

The judgment of conviction should be affirmed.

MOLLEN, P.J., DAMIANI and THOMPSON, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered March 26, 1980, affirmed.