THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
JOSEPH LENART, Respondent.

Second Department, January 17, 1983

APPEARANCES OF COUNSEL

*John J. Santucci, District Attorney* (*Aley Z. Alexander*
and *Richard G. Denzer* of counsel), for appellant.

OPINION OF THE COURT

*Per Curiam.*

On August 30, 1981, at about 1:20 A.M., Police Officer
Gary Parlefsky received a radio run regarding "a disor-
derly man" on 101st Avenue in Queens between 75th and
76th Streets. Upon his arrival at the location Parlefsky
was approached by a woman who told him "there was a
man running around in the street naked, and that he had
just went up to his apartment at 75-09 101 Avenue on the
third floor, and he was * * * breaking things up in the
apartment * * * She stated he had a wife and child, and she
wasn't sure whether or not they were there." The unidenti-
fied woman unlocked the front door to the apartment

building for Parlefsky and his partner. Arriving at the third floor, the police officers found one of the apartment doors open. Although the lights in the kitchen and living room were on, Parlefsky received no response to his calls into the apartment stating that he was a police officer. At this time Parlefsky noticed things were thrown about in the apartment. He called out a few more times and heard "grumbling" or "growling" coming from a darkened bedroom. Parlefsky, who was in uniform, proceeded to the bedroom and turned on the light. Defendant was found in the bedroom. Upon seeing Parlefsky he lunged across the bed toward a night table and attempted to get at something in the drawer. Parlefsky lunged at defendant. A scuffle ensued during which the mattress on the bed was removed from its position exposing a sawed off .20 gauge shotgun and a .44 magnum. After the defendant was subdued a .357 magnum was recovered from the drawer of the night table which defendant had lunged for when the police first entered the bedroom. The officers also seized a brown leather bag from under the bed which contained ammunition, an ammunition belt, a leather mask and brown gloves.

Defendant was subsequently arrested and indicted on charges of criminal possession of a weapon in the second degree, criminal possession of a weapon in the fourth degree (three counts) and resisting arrest. A *Mapp-Huntley* hearing was held on December 9, 1981, after which Criminal Term granted defendant's motion to suppress the physical evidence seized and statements made by him at the precinct house. In granting defendant's motion the court held that the entry and search of defendant's apartment violated his Fourth Amendment rights.

We disagree.

In *People v Mitchell* (39 NY2d 173, cert den 426 US 953) the Court of Appeals found that a warrantless search of the defendant's room was not interdicted by the Fourth Amendment inasmuch as it was triggered in response to an emergency situation rather than motivated by an intent to apprehend and arrest the defendant. In determining whether exigent circumstances exist, so as to permit such a

warrantless entry into an individual's home, the following factors must be present:

"(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

"(2) The search must not be primarily motivated by intent to arrest and seize evidence.

"(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched" (*People v Mitchell, supra,* pp 177-178).

The People have the burden of proving that the warrantless entry falls within the emergency doctrine exception (*United States v Goldenstein,* 456 F2d 1006, 1009, cert den *sub nom. Ray v United States,* 416 US 943). An examination of the hearing testimony herein reveals that the People have shown that exigent circumstances existed requiring prompt action by the police thereby justifying their warrantless entry into defendant's apartment.

The police were apprised of an individual living at a certain location who was engaged in unusual and violent behavior at approximately 1:20 A.M. Upon arriving at the third floor, which they were told was the floor on which the individual lived and which contained only two or three apartments, the police officers observed an open door and from that vantage point noticed the disruptive condition of defendant's apartment reasonably confirming the information they received about a man "breaking things up" in his apartment. Grumbling or growling noises could be heard coming from an interior room of the apartment. The police had information which led them to believe persons other than defendant might be present in the apartment. Under the circumstances the police had reasonable grounds to believe that there was an "immediate need" of police assistance for the protection of life and property (see *People v Kelly,* 83 AD2d 648). Furthermore, Parlefsky testified, and a reasonable interpretation of the facts indicates, that the search of the apartment was not primarily motivated by an intent to arrest and seize evidence (see *People v Gallmon,* 19 NY2d 389, cert den 390 US 911). Thus, the

first and second elements of the *Mitchell* test have been satisfied.

With respect to the final element, the cumulative circumstances indicate that the police had a reasonable basis to associate the emergency with defendant's apartment. The police were directed to the third floor by a woman who let them in the front door of the apartment building with her key. Criminal Term placed great weight on the fact that the woman was never identified. We note, however, that unlike the case of an anonymous tip as a basis for establishing probable cause, which must be evaluated in terms of the informant's basis of knowledge and veracity (see *Aguilar v Texas,* 378 US 108), emergency situations do not lend themselves to evaluation of the informer's veracity (*People v Earley,* 76 AD2d 335, 339; *People v Sustr,* 73 AD2d 582, 583; *People v McLaurin,* 43 NY2d 902, revg 56 AD2d 80, 84, on the dissenting opn of NUNEZ, J.). Accordingly, the exigent circumstances sanctioned the police presence in defendant's apartment (see *People v Mitchell,* 39 NY2d 173, cert den 426 US 953, *supra*).

Once in defendant's bedroom the seizure of defendant as he lunged across the bed toward the night table upon seeing the police was a reasonable response to defendant's conduct. Officer Parlefsky's reaction did nothing more than "maintain the *status quo* until additional information could be elicited" (see *People v Chestnut,* 51 NY2d 14, 22, cert den 449 US 1018).

Additionally, the two guns inadvertently exposed under the mattress were lawfully seized under the plain view doctrine (see *People v Jackson,* 41 NY2d 146; *People v Earley, supra*). And finally, the gun retrieved from the night table drawer and the brown leather bag found under the bed were properly seized (see *People v Fitzpatrick,* 32 NY2d 499, 507, cert den 414 US 1050; *People v Floyd,* 26 NY2d 558, 563).

Turning now to the suppression of the statements, we find that defendant's response during the recording of his pedigree for the arrest report, to Parlefsky's question regarding defendant's occupation, "I rob bad guys. I'm a robber", was freely and voluntarily given without any

coercive police conduct (see *Rhode Is. v Innis,* 446 US 291, 300; *People v Kaye,* 25 NY2d 139; *People v Bryant,* 87 AD2d 873, application for lv to app granted 57 NY2d 683). As such, the statements were not obtained in violation of defendant's constitutional rights.

TITONE, J. P., BROWN, RUBIN and BOYERS, JJ., concur.

Order of the Supreme Court, Queens County, dated January 18, 1982, reversed, on the law and the facts, defendant's motion denied, and matter remitted to Criminal Term for further proceedings.